Ruffin, C. J.
 

 The instruction, as we think, is certainly erroneous in the point, that the defendant acquired no property in the slave by the sale, because there was no actual delivery. A delivery is essential to the parol gift of a chattel; but a sale is good without it at common law. «As soon as the bargain is struck, the
 
 property
 
 of the goods is transferred to the vendee, and that of the price to the vendor; but the ven-dee cannot take the goods, until he tenders the price. But if he tenders the money to the vendor and he refuses it, the ven-dee may seize the goods, or have an action against the vendor for obtaining them.” 2 Bl. Com. 448. The rule is correctly and intelligibly laid down, in several cases, to be, that when the bargain has been agreed on, and every thing that the vendor has to do with the goods is complete, the sale is absolute, without actual payment or delivery, so that the property is in the vendee and the goods are at his risk.
 
 Farling v. Baxter,
 
 6 Barn. & Cres. 360.
 
 Hinde
 
 v.
 
 Whitehouse, 7
 
 East. 571. It is true that the vendee is not entitled to the possession, until he pays or tenders the price or gets day for the payment; but, as Mr. Blackstone says, the property is
 
 absolutely
 
 vested by a regular sale, without delivery.
 

 Thus it was at common law, as between the parties to the contract and all other persons, and in reference to all personal chattels. The acts of 1784 and 1792, c, 225, s. 7; and c. 363, altered the rule of the common law respecting the sales of slaves, where creditors or purchasers from the vendor are concerned. Whether the construction of those acts must be changed by reason of the form in which they are combined in the Revised Statutes, c. 37, s. 19, in which the preambles and recitals arc omitted, it is not incumbent on us now to deter
 
 *29
 
 mine, inasmuch as this transaction occurred in 1822, or before. As the acts then stood, it was in many cases decided, that they had no operation between the parties, but were intended for the benefit of credifors and purchasers alone.
 
 Knight
 
 v.
 
 Thomas,
 
 1 Hay. 289. Hence, where there is a bill of sale, it is good between the parties, though it be unattested and unregistered,
 
 Cutlar
 
 v.
 
 Spillar, 2
 
 Hay. 61; and there need be no writing at all, but the contract may be by parol,
 
 Rhodes
 
 v.
 
 Holmes,
 
 2 Hawks, 193. And in
 
 Bateman
 
 v.
 
 Bateman, 2
 
 Murph. 97; and
 
 Cotton
 
 v.
 
 Powell, 2
 
 Law Repos. 431, it was held that a sale of a slave was good by parol, as between the parties, without delivery, as it was at common law. Those cases are in point; and the evidence, if believed, established the payment of the money by the defendant, according to his contract. This point being decisive of the case, we need not consider, whether there was not evidence, on which the jury might have found the possession of the slave to have been in the son, after the contract with the father and while they were residing together. However that might be, the negro vested in the defendant by the contract of sale, without a delivery; and it does not appear that the father ever disputed it or set up any adverse possession or claim, but on the contrary, he continued, as long as he.lived, to acknowledge the son’s title.
 

 Pee Curiam, Judgment reversed and
 
 venire de novo
 
 awarded.